**PINOLE LAND COMPANY, Inc., a corporation, George Smith, individually and as co-partners, and United States Fidelity and Guaranty Company, a corporation, Appellants,**

v.

**James W. BAKER and First Western Bank and Trust Company, a corporation, Appellees.**

No. 16737.

United States Court of Appeals
Ninth Circuit.

Feb. 13, 1961.

829

L. Kenneth Say, Fresno, Cal., for appellant.

Rich, Fuidge & Dawson, Marysville, Cal., for appellee First Western Bank & Trust Co.

Victor L. Huber, Marysville, Cal., for appellee James W. Baker.

Before STEPHENS, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge.

This action is brought under the Miller Act, 40 U.S.C. §§ 270a and 270b, for the recovery of sums due for labor and materials furnished upon a public work of the United States. Appellee Baker, the plaintiff below, was subcontractor upon the job and appellant Pinole Land Company, Inc., was the prime contractor with the United States. Appellant United States Fidelity and Guaranty Company was Pinole's surety upon its performance bond furnished pursuant to § 270a. Appellee First Western Bank and Trust Company, as assignee of Baker, intervened as plaintiff.

Baker, by this action, seeks recovery of sums allegedly due him for labor and materials furnished. Pinole asserts a setoff for rental of equipment. The District Court rendered judgment for Baker, allowing Pinole, as setoff, what the court found to be the reasonable value of Pinole's equipment utilized by Baker. Upon this appeal Pinole contends that the rental price of the equipment was fixed by contract and that it was not available to the court to award compensation based upon reasonable value.

On April 10, 1956, Pinole entered into a contract with the United States to do certain clearing and grubbing work on the banks of the Feather River in Yuba and Sutter Counties, California, which work was necessitated by flood. United States Fidelity and Guaranty Company executed its bond pursuant to the Miller Act, agreeing to pay all claims against Pinole arising out of the contract. On April 27, 1956, Baker submitted a proposal to subcontract that portion of the job relating to the east side of the river. This proposal was accepted by Pinole and a written contract was prepared by it.

The contract provided that Baker would rent certain of Pinole's equipment for use on the job at a flat monthly rental and would assume the obligation of keeping it in repair. The contract specified that Baker had seen the equipment

and accepted it and acknowledged that it was in good condition. The contract also specified that Baker would supply a completion bond.

Baker refused to sign the contract until he had seen the equipment. He also protested the requirement of a bond as contrary to his understanding with Pinole. When he did see the equipment, he found it unsatisfactory. His assistant wrote to Pinole:

"The equipment referred to in the Feather River clearing contract dated April 30, 1956 between yourselves and Mr. Baker is not in good running order as noted in the contract. We have no alternative but to reject it until such time as the equipment can pass inspection by an impartial judge."

Pinole's representative on the job was one George Smith. Baker testified that after many conferences on the subject Smith promised Baker that a bond would not be required; that Baker would not be held responsible for the initial repair of the equipment; that Pinole would put the equipment in good working order and that Baker would not be liable for rental until it was put in good order. Work on the subcontract then proceeded with Baker making use of Pinole's equipment.

On May 16, 1956, Baker, having insisted that his understanding be reduced to writing before execution of the contract submitted by Pinole, received a letter from Smith:

"Mr. Leo F. Jarvis [president of Pinole] in a telephone conversation at 2:00 p. m. May 16, 1956 instructed me to have you sign the subcontract and return it without the bond to proceed with the job. Mr. Jarvis also instructed me regarding the tractors owned by Pinole Land Co., Inc. that are now on the job to have necessary repairs done and to put them to work and keep them working, your Company to take over as subcontractor on the project May 18, 1956. Adjustment equitable to both parties to be made in regard to costs and income on work performed prior to May 18, 1956."

Baker then executed the contract as prepared by Pinole.

Baker testified and the District Court found that Pinole never did place the equipment in sufficient repair. The record provides ample support for this finding.

■ Baker's position is that execution of the contract, having been induced by oral and written promises to the effect that Pinole would put the equipment in repair, those promises in effect became a part of the contract and superseded the acknowledgment contained in the contract that the equipment was then in good condition and was accepted by Baker as such. Baker further contends that when Pinole failed to place the equipment in repair, the condition precedent to Baker's obligation to pay the prescribed rental failed and that that obligation never came into effect; that Baker thus was obligated to pay no more than the reasonable value of the equipment actually used.

Such was the ruling of the District Court, and under the facts we find no error in this conclusion.

■ In ascertaining the reasonable value of the equipment, the District Court relied upon testimony as to the prevailing hourly rate for such equipment as was used. It allowed such rate for the hours of use to which equipment actually was put. It allowed no compensation for equipment which, although supplied to Baker for use on the job, was not used due to lack of repair. It placed upon Pinole the financial responsibility for maintaining the equipment in repair. The record establishes that, where equipment is rented upon an hourly basis, the duty of repair customarily rests upon the owner of the equipment so rented. Under the facts, we find no error in the court's judgment in these respects.

■ Pinole protests that Smith was without authority to modify the contract on behalf of Pinole. The District Court

found such authority to exist and the record amply supports this finding.

In one other respect, Pinole attacks the judgment of the District Court.

During the course of the contract work, a change order was issued by the United States authorizing Pinole to remove certain trees from the area to be cleared at a consideration of $87.00 a tree. The District Court found that these trees were removed by Baker pursuant to an oral agreement with Pinole that he should receive $77.43 per tree. Judgment was rendered against Pinole in accordance with this finding.

Pinole contends that the oral contract with Baker provided for a consideration of $60.00 per tree. There was a conflict in the evidence upon this point, but the court's finding, being supported in the record, will not be disturbed.

Affirmed.